## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**WILLIAM LEE WALLACE (#195022)**                                   **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**                                                     **NO. 17-1790-BAJ-RLB**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 27, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILLIAM LEE WALLACE (#195022)**     **CIVIL ACTION**

**VERSUS**

**DARREL VANNOY, ET AL.**     **NO. 17-1790-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, William Lee Wallace, challenges his conviction, entered in 2012 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder. The petitioner contends that (1) he was denied his constitutional right to appellate review because he was not provided with a transcript, (2) he was provided with ineffective assistance at trial when his attorney failed to retain an independent medical expert, (3) he was provided with ineffective assistance of counsel when his trial attorney failed to object to other crimes evidence, and (4) the evidence was insufficient to support his conviction.

**Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Wallace,* 13-2023 (La. App. 1 Cir. 12/27/13), 2013 WL 7122537), are as follows: On December 24, 2010, at about 1:00 a.m., Marcus Bryant, with his wife, Ebony Bryant, drove to U.S. Hwy. 61 in Zachary to assist his brother-in-law, Robert Jenkins, who had a broken down vehicle. Upon arriving at the scene, Marcus observed Robert pouring gas into a Suburban, and a green Ford F–150 pickup truck parked behind the Suburban. When Marcus got out of his car, the petitioner, who owned the green truck and whom Marcus knew, approached

Marcus and told him that Robert had the petitioner's gun. Robert confirmed to Marcus that he did have the petitioner's gun and that he was going to give it back to him. When the petitioner repeated to Marcus that Robert had his gun, Marcus told the petitioner to "hold on" and that he was going to get his gun back.

Once Robert was finished pouring the gas, he told Marcus that the Suburban's battery needed a jump. Marcus moved his car so it faced the Suburban, and hooked up jumper cables between the vehicles. Marcus then told Robert to start up the Suburban. When Robert turned, the petitioner ran up and stabbed Robert in the back with a knife that had a ten-inch blade. Robert turned around and asked what was going on, and the petitioner stabbed Robert in the chest. Robert ran and the petitioner chased him. At some point, the petitioner stopped chasing Robert, walked back to his truck, and drove away toward Sweetbriar, the trailer park where he lived.

Marcus called 911 and drove Robert to Lane Memorial Hospital. Robert subsequently died from his injuries. After speaking to Marcus at the hospital and based on what he told the 911 operator, the police went to Sweetbriar and found the petitioner's green truck in the trailer park, but could not find the petitioner.

The police taped off a crime scene by the petitioner's truck and scoured the trailer park in search of the petitioner. At some point, the petitioner approached Deputy David Amrhein, identified himself, and told the deputy he was a possible suspect in their investigation. Deputy Amrhein drew his weapon and had the petitioner lie on the ground. When Detective Nick Locicero returned to the crime scene, he saw the petitioner prone and heard him say repeatedly that Robert should have given him back his gun and that he tried to kill Robert. Detective

Locicero asked the petitioner where the knife was that he used to stab Robert. The petitioner walked the detective to a tree nearby, behind which the knife had been secreted.

Detective Locicero interviewed the petitioner later that same day at the police station. The petitioner stated in his interview that after running out of gas, Robert rode with the petitioner in his truck to the gas station. The petitioner realized Robert took his gun when they were riding together to the gas station. The petitioner kept asking for his gun back, but Robert ignored the entreaties and would not return the gun.

Back on U.S. Hwy. 61, the petitioner told Marcus about Robert not returning his gun while Robert was pouring gas into the Suburban. The petitioner stated that he had finally had enough, so he retrieved a knife from his truck and stabbed Robert twice while he was working on the vehicle. When Robert ran, the petitioner chased him but could not catch him. The petitioner then got in his truck and drove to the trailer park. The petitioner did not testify at trial.

## Procedural History

After a trial by jury conducted in May, 2012, the petitioner was found guilty of second degree murder. The petitioner was sentenced on June 22, 2012, to life imprisonment without the benefit of probation, parole or suspension of sentence. The petitioner thereafter appealed his conviction through his attorney, asserting a claim of insufficiency of the evidence.

On December 27, 2013, the petitioner's conviction and sentence were affirmed by the Louisiana Court of Appeal for the First Circuit. *See State v. Wallace,* 13-2023 (La. App. 1 Cir. 12/27/13), 2013 WL 7122537. The petitioner's application for supervisory review in the Louisiana Supreme Court was denied on June 20, 2014. *See State v. Wallace*, 14-0159 (La. 6/20/14), 141 So.3d 808.

On or about January 15, 2015, the petitioner filed an application for post-conviction relief in the state district court, which was dismissed by the trial court on December 4, 2015. The plaintiff sought further review in the appellate courts which was denied. *See State ex rel. Wallace v. State*, 16-0803 (La. 8/4/17), 223 So.3d 1149. On or about December 20, 2017, the petitioner filed the instant application for habeas corpus relief in this Court.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal

law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas relief.

## Substantive Review

### *Claims (2) and (3): Ineffective Assistance of Counsel*

Addressing first the petitioner's claims of ineffective assistance of counsel, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g*., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to

eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter*, *supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington*, *supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter*, *supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case. In Claim (2), the petitioner asserts that his trial counsel was ineffective for failing hire an independent medical and/or forensic expert to rebut the testimony of the state's medical expert. Dr. Bruce Wainer, a forensic pathologist, testified that the victim suffered two stab wounds, with the lethal wound being an approximately 8 inch stab wound to the victim's chest that penetrated the heart

causing extensive blood loss. The petitioner argues that he stopped pursuing the victim once his blood had cooled, and while the victim was fleeing he left the scene without killing the victim. However, the petitioner did kill the victim. Although the victim didn't die immediately upon being stabbed by the petitioner, it is clear that Robert Jenkins died due to the stab wound to his chest. It is unclear what testimony the petitioner believes could have been given by any other expert that would convince a jury that the victim died from anything other than this wound. As such, the petitioner's counsel was not ineffective for failing to retain an expert.

In Claim (3), the petitioner asserts that his trial counsel was ineffective for failing to object to testimony regarding other crimes evidence. The petitioner argues that the prosecutor is limited to attacking the credibility of the witness on the stand and cannot attack the credibility of the petitioner by proxy. Therefore, the petitioner argues that his counsel should have objected when the witnesses were questioned regarding the petitioner's prior arrests.

An attorney's failure to object does not constitute deficient representation unless there is a sound basis for the objection. *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). Stated differently, a futile or "meritless objection cannot be grounds for a finding of deficient performance." *Id*.

In the instant matter, while the state may have elicited other crimes evidence at his trial, it was introduced after the petitioner offered evidence of his own good character. As noted by the commissioner when reviewing the plaintiff's PCR claim, under Louisiana law, when a defendant chooses to place his character at issue by introducing evidence of his good character, the State is permitted to rebut that evidence. Cross-examination of a character witness may extend to his knowledge of prior arrests. *See* Louisiana Code of Evidence article 405 and *State v. Bagley*, 378 So.2d 1356 (La. 6/25/79).

The Louisiana Supreme Court has formulated safeguards to regulate the prosecution's cross-examination of character witnesses by requiring the trial court to determine the following in allowing the cross-examination: (1) There is no question as to the fact of the subject matter of the rumor; that is, of the previous arrest, conviction or other pertinent misconduct of the defendant, (2) A reasonable likelihood exists that the previous arrest, conviction or other pertinent misconduct would have been known about the neighborhood or community before the alleged commission of the offense on trial, (3) Neither the event, conduct nor rumor concerning it occurred at a time too remote from the present offense,(4) The earlier event, misconduct or rumor concerned the specific trait involved in the offense for which the accused is on trial, and (5) The examination is conducted in the proper question form, *i.e* . "Have you heard?" *State v. Johnson,* 389 So.2d 372, 376–77 (La.1980).  The Louisiana Supreme Court later ruled that, in spite of these safeguards, the ultimate question remained whether the prosecution's cross-examination unduly prejudiced the defendant before the jury. *See State v. Sepulvado,* 93-2692 (La. 4/8/96), 672 So.2d 158, 167.

The petitioner presented several character witnesses, and each generally testified that to their knowledge the petitioner was a kind and non-violent person.  On cross, two of the witnesses were briefly asked if they had any knowledge of the petitioner's arrests in 1981 and 1987 for simple battery and aggravated assault.  The character witnesses were also questioned about prior DWI arrests, a fact first elicited by defense counsel on direct examination.

The petitioner does not allege that any of the above mentioned safeguards were violated. Furthermore, in accordance with Louisiana Code of Evidence article 405, the petitioner put his character at issue and the state was entitled to rebut the testimony of his purported good character and to discredit the witnesses by showing that they did not have actual knowledge of the entirety

of the petitioner's reputation. As such, any prejudice to the petitioner was not undue and there was no sound basis for an objection by the petitioner's trial counsel. Accordingly, neither Claim (2) nor Claim (3) presents an unreasonable application of *Strickland* by the state courts, and these claims should be dismissed with prejudice for lack of merit.

### *Claim (4): Sufficiency of the Evidence*

In Claim (4), the petitioner asserts that the evidence was insufficient to prove the elements of any crime other than manslaughter. Applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the Louisiana First Circuit Court of Appeal concluded that there was sufficient evidence to support the conviction for second degree murder. This Court agrees.

As noted by the appellate court, there was no testimony or physical evidence that Robert provoked the defendant in any way. The testimony established that the petitioner was upset that Robert had his gun and would not give it back. Moments later, the petitioner approached Robert and stabbed him in the back. When Robert turned around, the petitioner stabbed him in the chest. As such, the appellate court concluded that a rational factfinder could have found that such circumstances would not have deprived an average person of his self-control and cool reflection.

Additionally, second degree murder, as defined by Louisiana Revised Statute 14:30.1(A)(1) is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. The appellate court noted that the petitioner's actions following the stabbing were consistent with a specific intent to kill. The testimony established that the petitioner did not render aid to Robert and instead fled the scene. The appellate court further noted that flight and attempt to avoid apprehension indicate consciousness of guilt and are

circumstances from which a juror may infer guilt. As such, a factfinder could have reasonably concluded that the petitioner committed second degree murder.

For the reasons noted by the state court, the evidence presented in the instant case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find the petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, this claim is without merit.

### *Claim (1): Denial of Free Copy of Court Record*

The petitioner asserts in Claim (1) that his constitutional rights were violated because he was not provided with a copy of the court record in order to prepare a *pro se* appellate brief or to prepare his application for post-conviction relief. First, the petitioner was represented by counsel on appeal. Although a criminal defendant has a constitutional right to the assistance of counsel, and a related right to waive assistance of counsel, a criminal defendant has no constitutional right to "hybrid representation" "partly by counsel and partly by himself." *Neal v. Texas,* 870 F.2d 312, 315–16 (5th Cir.1989) (citing *United States v. Daniels,* 572 F.2d 535, 540 (5th Cir.1978). As such, the plaintiff had no constitutional right to file his own appellate brief therefore the failure to receive a copy of the record is of no consequence.

Furthermore, there is no constitutional mandate that one pursuing post-conviction collateral relief must be provided a free copy of his state court criminal trial record. *Smith v. Beto*, 472 F.2d 164 (5th Cir. 1973). On collateral review an indigent petitioner's right to a trial transcript is not absolute. Indeed, an indigent petitioner must show a need for the transcript. *Id*. at 165. A petitioner must also demonstrate that the claims he seeks to raise are not frivolous. In

other words, he must show a particularized need for the transcripts. *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. l992) (*citing United States v. MacCollom*, 426 U.S. 317 (1976)).

The petitioner made no such showing in the state court in his Motion for Production of Documents. The petitioner did not identify any specific portion of the court record necessary to support a claim set forth in his PCR application. The petitioner also makes no such showing herein. Since the petitioner has not shown that the state trial court's denial of the petitioner's request for a free copy of the state court record was an unreasonable application of federal law, his claim concerning entitlement to a free copy of the record must be dismissed on the merits.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of defendant's application or the

correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed with prejudice. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on March 27, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**